## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

KARRI BELL, on behalf of herself and all                     Case No.17-cv-669
others similarly situated,

                    Plaintiff,

v.

IYOGI, INC., a New York corporation,

                    Defendant.

---

### CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff Karri Bell ("Plaintiff") brings this class action complaint against Defendant iYogi, Inc. ("iYogi" or "Defendant") to stop Defendant's practice of making unsolicited calls to the telephones of consumers nationwide in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.       iYogi is a remote technical support firm which provides subscription based technical support for personal computers.

2.       iYogi offers its services through yearly flat-fee technical support plans, however, after the one-year service plan expires, and in an effort to retain customers, iYogi makes repeated and harassing telephone calls to consumers' cellular telephones, even after repeated requests to stop calling.

3.      In 2015, the Eastern District of California approved a class action settlement which alleged similar violations of the TCPA as alleged here.  The class for that settlement included iYogi subscribers and former subscribers whom iYogi made outbound calls from September 23, 2009 to November 18, 2013.

4.      Also in 2015, Washington State filed a lawsuit alleging deceptive business practices under the state Consumer Protection Act and violations of the state Computer Spyware Statue asserting that hundreds or thousands of Washington residents had been scammed by iYogi, inducing consumers into purchasing software and services they didn't need.

5.      The Better Business Bureau ("BBB") lists hundreds of complaints against iYogi for harassing phone calls as well as service scams.

6.      For example the following BBB complaint is dated, April 13, 2017.

In 2015 I purchased the services if iYogi to help repair a computer problem on my aunt's computer. They treated the problem. Without doing any research on iYogi, my husband again paid them in 2016 to assist with a computer problem, which they also fixed. In the last six months, however, I have received phone calls from them from more than four different numbers, sometimes with multiple calls in a single day. They want remote access to my computer. Yesterday, they claimed they wanted this to be able to refund me the amount of $199. I said they could send me a check in the mail, they said their servers were down and they couldn't do that. I refused to give them access to my computer. I am on the no-call list and I remind them of this each time they call. If I could afford it, I would file a lawsuit against them claiming harassment for the shear number of times they have called me and the nuisance and stress factor this is on my personal life. I have identified and labeled four different numbers so that when they call from one of those numbers my caller ID tells me that it's an iYogi call. I do not receive any other unwanted calls, but they refuse to stop calling me. DO NOT get yourself into any contracts with this company! They will scam you AND have access to your computer!! If anyone files a class action lawsuit against them for harassment, sign me up for benefits!!

7.      Another BBB complaint dated March 16, 2017, states the following:

A computer company called IYOGI keeps harassing me several years ago I signed up and paid them two hundred dollars to monitor my computer and they have done nothing but call me to sell me more things since then without providing any service. Today they called and said the BBB ordered them to refund my money and wanted access to my computer to do this The I told them that I wanted to contact the BBB to see if this was

true they hung up on me Many of the calls are horrible with vile language Have nothing to do with this company!

8.      A third BBB complaint dated March 6, 2017, states as follows:

This is a review of the most "NEGATIVE" and "FRUSTRATING" experience I have ever encountered. I bought into iYogi services, based on what they described as being the No. 1 technical support company in the world and a highly regarded company with the Better Business Bureau. As a result, I have been 100% displeased with iYogi and I have asked them to STOP CALLING ME over 260 times. I have kept record of the 14 number caller that shows up on my Call Display. I don't answer the call most of the times and they never leave a message. I get at least 1 call a day and have for the past 4 months. When I do answer, I politely as the caller technician to stop calling my number; I tell him that I do not want to use iYogi services and to take me off their calling list. The caller usually hangs up on me. Other times I have asked to speak to the supervisor. if one comes to the phone, I ask him to remove my number and do not call me ever again. All this doesn't help. I still receive at least 1 call every day at different times of the day. Numbers appear on my call display as indicated here but no 2 numbers are the same. The number looks like this particular one: ************. I have contacted Bell Canada to put a block on these calls but since the callers number differs each time, even Bell Canada cannot block their calls. TAKE MY ADVISE, do not sign up with iYogi, no matter how convincing they seem to be. If you sign up with iYogi, you'll regret it for years to come.

9.      The TCPA strictly forbids nuisance and harassing phone calls exactly like those alleged in this Complaint – intrusive calls to private cellular phones, placed to numbers obtained without the prior express consent of the call recipients and/or requests to stop calling.

10.      iYogi's violations caused Plaintiff and members of the Class actual harm, included aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited phone calls, as well as the violation of their statutory rights.

11.      Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to iYogi's conduct, and is likely to be redressed by a favorable decision in this action.

12.      Plaintiff seeks an injunction stopping iYogi from making unsolicited phone calls, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

13.     This Court has federal question subject matter jurisdiction under 28 U.S.C. §

1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*,

a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012); *Brill v.*

*Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005). Subject matter jurisdiction over

this action is further appropriate in this Court pursuant to 28 U.S.C. § 1332(d)(2), because (i) at

least one member of the putative Classes is a citizen of a state different than Defendant, (ii) the

amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) none of

the exceptions under that subsection apply to this action.

14.     The Court has personal jurisdiction over Defendant and venue is proper in this

District because Defendant transacts significant amounts of business within this District.

15.     Specifically, personal jurisdiction over Defendant is proper in this District

because Defendant, at all times herein mentioned, was doing business in the county of Ashland,

State of Wisconsin, and a substantial part of the events giving rise to the claim occurred in this

jurisdiction.

## PARTIES

16.     Plaintiff Karri Bell is, and at all times mentioned was, a resident of the State of

Wisconsin. She is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. §

153 (39).

17.     Defendant iYogi, is a corporation incorporated in and existing under the laws of

the State of New York,headquartered at 181 Hudson Street, Unit 1C, New York, New York

10013, and is a "person" as defined by 47 U.S.C. § 153 (39).

18.     Plaintiff alleges that at all times relevant herein iYogi conducted business in the state of Wisconsin, and within this District.

**THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA")**
**47 U.S.C. §§ 227 *et seq.***

19.     In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

20.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

21.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

22.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] In re *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4]  The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

23.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

24.     Further, as of October 16, 2013, express written consent is required to make any such telemarking calls.[6]

25.     On July 10, 2015 the FCC released a Declaratory Ruling wherein it was confirmed that even if a consumer originally did provide "prior express consent" that caller has a right to revoke consent, using any reasonable method, including orally or in writing.[7]

## FACTUAL ALLEGATIONS

26.     Plaintiff retained Defendant's services in or around 2013 or 2014 to help with a computer issue.  At that time, Plaintiff provided full payment for a one-year contract for ongoing computer support services.  iYogi however never resolved Plaintiff's computer issue and

---

[4]*In re of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 2008 WL 65485 (F.C.C.) (2008).

[5]*FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

[6]*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 27 F.C.C.R. 1830, 1837 ¶ 18, 1839 ¶ 20, 1858 ¶ 71 (F.C.C. Feb. 15, 2012) ("2012 FCC Order").

[7]*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 15-72 (FCC July 10, 2015) available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (last visited on August 28, 2017).

throughout the year of Plaintiff's subscription, Plaintiff never contacted iYogi for computer assistance or otherwise utilized their services.  The subscription was not an auto-renewal plan.

27.     Leading up to the expiration of Plaintiff's service plan, Defendant began placing numerous calls to her cellular telephone soliciting her to renew her service plan.  Plaintiff explicitly stated that she was not interested in renewing her plan and expressly requested that Defendant stop making future calls to her.

28.     Despite Plaintiff's numerous requests to stop calling, Defendant made phone calls to Plaintiff at least once per week from various numbers, at times utilizing inappropriate language, to sell Plaintiff another subscription to iYogi's service.   Plaintiff has been receiving these unsolicited and harassing phone calls since her contract was set to expire 2 to 3 years ago.

29.     Plaintiff did not provide her cellular telephone number to Defendant for telemarketing purposes and never consented to receive telemarketing calls from Defendant. Even more, Plaintiff never consented to receive telemarketing calls from Defendant after her service plan had expired and her contract with Defendant was terminated.

30.     The unsolicited phone placed to Plaintiff's wireless telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1)and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place phone calls to Plaintiff's cellular telephone.

31.     The existence of this ATDS is further evidenced by the sheer volume of calls placed by iYogi.  Defendant could only make such calls using such automated equipment.

32.     The existence of or an artificial or prerecorded voice is further evidenced by the fact that when Plaintiff would answer the phone calls from iYogi she would hear a pre-recorded voice requesting that she hold for the next agent.

33.     The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

34.     Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited phone calls pursuant to 47 U.S.C. § 227 (b)(1)(A) and/or has revoked any alleged prior express consent.

35.     These phone calls made by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and on behalf of and all others similarly situated ("the Class").

37.     Plaintiff represents, and is a member of the Class, consisting of all persons within the United States who received any unsolicited phone call from Defendant or its agents on their cellular telephones through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3)or by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which phone callby Defendant or its agents were not made for emergency purposes or with the recipients' prior express consent, from November 19, 2013 through the date of final approval.

38.     Defendant and its employees or agents are excluded from the Class.  Plaintiff does not know the number of members in the Class, but believes the Class members number in the

8

hundreds of thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

39.     Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by making unsolicited phone calls, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members.  Plaintiff and the Class members were damaged thereby.

40.     This suit seeks only statutory damages and injunctive relief for on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

41.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records.

42.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

a.  Whether, from November 19, 2013 through the date of final approval, Defendant or its agents made phone calls without the recipients' prior express

9

consent (other than a phone callmade for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or pre-recorded voice system, to any telephone number assigned to a cellular telephone service;

b. Whether the equipment Defendant, or its agents, used to make the phone calls in question was an automatic telephone dialing system as contemplated by the TCPA;

c. Whether Defendant, or its agents, systematically made telephone calls to persons featuring an artificial or pre-recorded voice;

d. Whether Defendant, or its agents, systematically made telephone calls to persons who did not previously provide Defendant with their prior express consent to receive such phone calls;

e. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

f. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

43.    As a person that received at least one unsolicited phone call to her cell phone without Plaintiff's prior express contest, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

44.    Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be

10

allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

45.     Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

46.     A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  Class-wide damages are essential to induce Defendant to comply with federal law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

47.     Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT 1

### NEGLIGENT VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227 *ET SEQ.*

48.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49.     Each such phone call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendant was able to effectively make thousands of phone calls simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.  These phone calls were made without the prior express consent of the Plaintiff and other members of the Class to receive such phone calls.

50.     Defendant also made telephone calls without the prior express consent of the Plaintiff and other members of the Class to receive such phone calls.

51.     Defendant also made telephone calls featuring a prerecorded or artificial voice without the prior express consent of the Plaintiff and other members of the Class to receive such telephone calls.

52.     The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

53.     As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

12

54.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT 2

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227 *ET SEQ.*

55.     Plaintiff incorporates by reference the above paragraphs 1 through 47 inclusive, of this Complaint as though fully stated herein.

56.     Each such phone call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendant was able to effectively make thousands of phone calls simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.  These phone calls were made without the prior express consent of the Plaintiff and other members of the Class to receive such phone calls.

57.     Defendant also made telephone calls featuring a prerecorded or artificial voice without the prior express consent of the Plaintiff and other members of the Class to receive such telephone calls.

58.     The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

59.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

13

60.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF

**Wherefore**, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

### FIRST COUNT FOR NEGLIGENT VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

61.     As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

62.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### SECOND COUNT FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

63.     As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

64.     Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

* * *

14

65.     An order certifying the Class as defined above, appointing Plaintiff Bell as Class Representatives, and appointing Ronald A. Marron of the Law Offices of Ronald A. Marron as Class Counsel.

66.     An award of reasonable attorneys' fees (in the event of a class recovery) and costs.

67.     Any other relief the Court may deem reasonable, just and proper.

**JURY DEMAND**

 Plaintiff hereby demands a trial by jury on all issues so triable.

**<u>DOCUMENT PRESERVATION DEMAND</u>**

Plaintiff hereby demands that Defendant take affirmative steps to preserve allphone calls, recordings, data, emails, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the making of phone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff or the account in question, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials, and notify the undersigned of the circumstances immediately so that counsel may take appropriate action. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

Dated:  August 28, 2017                          s/ Jeffrey M. Salas
                                                 By: Jeffrey M. Salas
                                                 **SALAS WANG LLC**
                                                 73 W. Monroe, Suite 219
                                                 Chicago, Illinois 60603
                                                 Telephone: (312)803-4963

Dated:  August 28, 2017                     s/ Ronald A. Marron
                                            By: Ronald A. Marron
                                            **LAW OFFICES OF RONALD A. MARRON**
                                            RONALD A. MARRON (CA Bar No. 175650)
                                            ALEXIS WOOD (CA Bar No. 270200)
                                            KAS GALLUCCI (CA Bar No. 288709)
                                            651 Arroyo Drive
                                            San Diego, California 92103
                                            Telephone: (619) 696-9006
                                            Facsimile: (619) 564-6665

                                            ***Attorneys for Plaintiff and the Proposed Class***